Case number 20-1092, Kimberly Springsteen-Abbott petitioner versus Securities and Exchange Commission. Mr. Dre for the petitioner, Mr. Starzylski for the respondent. Mr. Dre, you can start. Good morning and may it please the court. I'm Dominic Dre and I represent the petitioner, Kimberly Springsteen-Abbott. This case is about three due process violations and two unlawful sanctions. The former includes sanctions imposed for unproven charges, inadequate notice of allegations, and unconstitutionally appointed regulators. The result is a lifetime ban which this court has described as the securities industry equivalent of capital punishment for a woman who consistently under-reimbursed herself 10 percent, donated over $2 million to the funds that are in question, acknowledged misallocations when presented with evidence, adopted a new accounting procedure that FINRA and the SEC have inspected since without any objections, and who has reallocated all of the money that was in question. In fact, once you peel away the continuing education expenses, which were legitimate business expenses under the operating agreements, all that remains in this case that's actually been proven are 26 random and inadvertent personal expenses, which gets us to the first of the due process violations here. Where did you raise those due process arguments before the SEC? You agree that you did not raise them there? No, ma'am. So a couple of things on that. I was going to point out in our reply brief at page five, there are numerous points where we raised due process arguments throughout this litigation. Where did you raise, can you tell me the page number of your brief to SEC where you raised these specific arguments that you just articulated to us? I believe it's actually cited on page five. No, no, I'm sorry, of your brief to the SEC. Yes, yes, your honor. JA 7380 and 82. I might add that the SEC knew that this is what it was reviewing because at page nine of the order that we're talking about. Slow down here for a second. Sorry, I want to make sure I'm on the same page as you. Sorry, what pages did you say this you're talking about? Because I don't have right numbers on my appendix to go up as high as you're going. Well, 7380 and 82. Okay, I thought you were saying 7380 was the number. That's my fault. I don't have a 7000. Yeah, no, that would be a surprise to all of us. Thank you. And at those points, I can just read you the quote, Judge Millett, perhaps that would be helpful. At those pages, we point out that FINRA violated the norms for assessing credibility, applied a double standard with respect to accounting. So, Mr. Dray, though, can you point to where you've raised the constitutional due process claims, rather than claims about due process under FINRA's, you know, various statutory requirements? Isn't the language of the statute fair process fair? I seem to recall, uh, now that may be somewhat different from constitutional due process. Yes. So, as explained in the brief, the statute calls for fair process, that's in H2. And throughout, we asked for due process. I mean, for example, again, I'm just reading this off of page five of the reply brief at 247. She says that FINRA hearing panel deprived her of due process rights. Sorry, JA 247. I just want to pin this down because when I looked, I did not see this, the constitutional arguments you're voicing now. You say on 247, which one are you pointing to? 247. The quote is okay. Well, that's just is this your notice? What is this? Is this a notice of appeal? Yeah, this is a notice of appeal. This isn't a brief. You have a lot of things on this notice of appeal you never briefed to the SEC. So, where I'd like, if you could point me to the brief to the SEC, where you raised that it was unconstitutional, your first argument to us to treat a schedule of expenses listing allegedly wrongful expenses as evidence. Where is that one in your SEC brief? Perhaps 203, JA 203 would be more satisfactory in which she insists upon the protection of due process rights. That's the appellant's memorandum. Sorry, where are you talking? 203, JA 203. I'm on that page. Sorry, which paragraph just to make it go faster. I'm sorry, I don't know the exact paragraph, Your Honor. But I think in the meantime, I can respond to Judge Silverman's question, which is the SEC itself argues that this is sort of beside the point because under cases like Cody, which is First Circuit decision, they treat the due process guarantee under the Constitution and under the statute as comparable. And so, even if the court construed this only as raising statutory procedural rights, they should be treated in part in material with the due process rights under the Constitution. And moreover, all of this is still arbitrary. I'm still on page 203. I also want to make sure you answer Judge Rouse's earlier question. I don't see on page. I see a general line, a sentence that says the SD rules. I don't know what SD stands for. Insist upon the protection of due process rights and do not provide for SD of someone who has not had their day in court beyond a reasonable doubt standard. But that's not what you've argued to us. So am I missing? Is there something here where you're actually making the arguments you've made to us? So the argument there encompasses due process rights, which. But that's not enough to just say due process, right? You're making arguments to us that we have to make sure as a matter of jurisdiction that you actually raised. And just saying to the SEC due process is way too vague. Of course. And so then we have and this is the original string site that I gave your honor where it's 7380 and 82. She explains in greater detail that FINRA violated the norms for assessing credibility, applied a double standard with respect to errors and treated proof of one item as establishing the impropriety of every item on the list. And that's what gets us to the pattern. The SEC did that or FINRA did that? FINRA did that and the SEC did the same thing. But then there was a remand to FINRA and it had to then actually narrow down that list. But before we go on, Judge Rouse, did you get your question answered about these pages? Yeah. I mean, I guess I don't see that. I don't see anything that you're pointing to in the record that mentions the constitutional claim. So I guess if we assume that those constitutional claims were not exhausted, have you presented reasonable grounds for us to consider them here on appeal, assuming that they were not exhausted? Yes, Your Honor, as we explain, it is a very lax standard for reasonable grounds. This court's opinion in action for children's television says that it is unnecessary to present arguments when an agency's general views are known. When it comes to most of these issues, that's more than satisfied. And I might add that even here- Well, before you add that, you said the statute already requires fair procedure. And to the extent the SEC treats that as equivalent or certainly including the constitutional minimum of due process, we, before we could even decide the constitutional issue as a matter of constitutional avoidance, would have to decide if the statute was violated. So we're back to looking again for where you made the same arguments you're making to us now as statutory arguments, which the SEC, of course, is qualified to decide. So where did you- Your Honor, I'm going to endeavor to reserve the balance of my time, I'm afraid. Don't worry about that. I really don't worry about that. We'll give you some time for rebuttal, but we're going to try and at least, I think, understand where this was actually preserved. Of course. And I'm trying to situate it within this case as a whole. So I have given you the best citations that I have for that. They're on page 5. Counsel, isn't your point really that the statutory demand for fair process is not substantively different than due process? So let's assume you didn't raise a constitutional due process. As the First Circuit had pointed out, fair process is virtually the same. But in the Yes, Your Honor. And that is why I cited the Cody opinion. So I'll be as quick as possible with these points. There are, as I said, three due process violations at issue here. The first are the- Why don't you use the term fair process so that we don't- Fair process it is. There are three fair process violations here. One is the change between, as Judge Miller pointed out, this case was before the SEC in 2017. They found that there was not evidence or no evidence for almost all of the 1,840 allegations. So they remanded it. They found at that time in 2017 that there had not been a showing of a pattern of practice. On remand and without a new hearing, FINRA simply declared that there was a pattern of practice. But if you look at the actual evidence in this case, and we've done our very best to make this as easy as possible, there is- They don't identify the pattern that would be at issue. So there are examples of patterns and practices in this case. For example, the 10% under reimbursement that Ms. Springsteen Abbott always made for herself. This sounds like a sufficiency of evidence argument. This doesn't sound like a due process argument. No, because what we needed was the reopening. I'm pointing out the arbitrary and capriciousness of finding a pattern of practice where there is not- That sounds like a sufficiency of evidence argument. That's not a due process argument. Why couldn't they- Why couldn't they rely on the record in the first instance? They didn't have to open up again as a matter of fair process if the prior record was adequate. If it was, and it is not. And that's the whole point, is that the SEC- This is not correct. The SEC says in 2017, you haven't shown a pattern or practice. They send it back. There's no new evidence about a pattern or practice, and they just declare a pattern or practice. That's- They went through and proved, I forget, 80 or something particular things, okay? 80 different times over the course of three different years. And then they concluded that 80 something times over the course of three different years is a pattern or practice. That's not one incident. I don't understand why you say the record didn't change. They proved exactly as you wanted, specific claims, not throwing in the other thousand. And they did it over three years, and that's- I don't know how- So the first thing in that is to subtract the 58 continuing education and other businesses. No, we don't have to subtract those. That's a separate argument. You may have a sufficiency argument. I'm trying to find your due process argument. So the process point is that- Fair process, as Judge Sheldon says. Yeah, that these were never- These allegations- She gets punished for 1,840 allegations that were not proven, or 1,700 some odd. No, she doesn't. The SEC remanded and said, you can't do that, Finran. So then Finran came back and said, here's 80 something, and they occurred over the course of three different years. And they made- Wait, what's the problem with that? The problem with that is that they got it half right. They reduced the fine and the disgorgement to match that reduced showing, but they didn't reduce the lifetime bar. That is an unfair process for her, and it departs from all the other- Whenever you don't get what you want, it's an unfair process? Whenever you don't get the outcome you want? Of course not. The failure here, though, is on remand, the numerical components, they adjusted by reducing the disgorgement and reducing the fine, but they never adjusted the lifetime ban. Because they thought it was still appropriate for 80 something instances over the course of three years, combined with lying to investigators, and engaging in what they found was bad faith. So again, that is the fruit of the unfair process as well. The credibility determination was born of a process in which only at the hearing, it's JA 1033, Ms. Springsteen-Abbott objected to the inaccuracies in the expense schedule that she was given. At 1034, Finran says, the Department of Enforcement says they'll have a new corrected schedule within a day or two. They didn't present it until after the hearing and upon demand in a letter, this is JA 501 through 02, in which Ms. Springsteen-Abbott insisted on correct allegations against her. And even when that arrived, Finran refused to reopen the record so that she could respond to the corrected schedule. So if you look at these things, and in fact, take the example of the children's meal that the 907 rather, where Ms. Springsteen-Abbott has an expense for a children's meal, and she has a bunch of expenses from the same restaurant, we know that. And they point out at the hearing that this was a children's meal, and she admits that she was on a diet and so forth after a somewhat embarrassing line of questioning. And then they give her evidence that this children's meal was actually not her, but rather her grandchildren. And then she immediately says on page 907, oh, then this was a mistake, and we'll reallocate it as soon as I get back to the office. That is the kind of opportunity she should have had to respond to the allegations against her instead. She didn't have that exact opportunity, and she did respond in the hearing. And then she got caught when she said, oh, no, repeatedly, that was my diet meal. She didn't say I'm not sure, I don't remember. She said, no, that was my I was on a diet at that time. And that's only when she got confronted with the email that she admitted that, in fact, it was for her grandchildren. So I don't understand what's the process problem there. She had every opportunity to respond during questioning, and she did, she just got caught. The problem is that all of these things were extremely dubious, because many of them were riddled with errors. And so she was Counselor, it seems to me you are fighting over the evidence in the case. I'm listening carefully, and I don't hear a real process question, whether fair process or due process. Well, then let me give you the third one, Your Honor, which is the unconstitutionally appointed adjudicators. This one concerns and all three of them, again, are correct as under the APA's your excuse me. Go ahead, Naomi. Oh, I was gonna say my my question to you about the appointments clause questions was, where did you exhaust those in the proceedings below? So that one is not exhausted in the proceedings below. And as we explained, based on Freitag and this court's opinion in Koretsky, that does not have to be presented. So so Freitag involved a non-jurisdictional exhaustion requirement. But here we have a jurisdictional exhaustion requirement. Doesn't that distinguish Freitag from this case? No, it doesn't. Because Freitag explains that the animating decision there is the judiciary's interest in protecting the separation of powers. It's not tethered to whether or not it was jurisdictional or mandatory or any of these other threshold issues. And in fact, I have an update on that because the two cases, the two appointments clause cases that the SEC cites in response, Ginella and Malouf, we mentioned in the reply brief that those are the subject of a pending cert petition in Carr. The Supreme Court granted that a couple of weeks ago to take up the question of exhaustion in the ALJ context. Again, this is cited in our reply brief. It's the Carr case. It was granted on 11-9-2020, in which the court will take up this appointments clause preservation issue. That's the SEC ALJ, right? Yes, ma'am. Yeah, which is clearly a state actor. But you have to the question is whether you exhausted the state actor argument when you're not. Right? And that is not something that the SEC has said. It's said their SROs can be treated as state actors sometimes. And so it wouldn't have been futile to raise that issue before the SEC. And you may have even been able to wrap it into a fair procedure argument. So again, Your Honor, I think that would be relevant. Or that is a conversation we can have around some of the other claims. But that is not relevant for the appointments clause conversation because Freitag, Koretsky, and the PCAOB case, which explains that the probability of success, whether it's a non-frivolous claim or not, is relevant to the decision about whether ordinary preservation rules apply. And they do not. And PCAOB, if this court reaches the merits, disposes of this entirely because that is... Wait a minute, counsel. Elgin backed off the PCAOB case, didn't it? Not in relevant part, Your Honor. The holding here is, it's principally at page 44 and 47 of that case where it explains the similarities in the double good cause removal, which applies to this entity. Was your firm counsel before the commission? We were at various times. There were other counsel as well. So why wasn't the appointment clause issue raised before the commission? Why in Lord's name would anybody representing who you represent not raise the appointments clause issue, knowing that if you don't raise it before the commission, you're going to at least have a major problem in the court of appeals? I'm mystified as to why these cases come up all over the country in which counsel hasn't raised the constitutional question before the agency. They do come up all over the country. And I take your honor's practice tip. I was not personally involved at that time. It's worth noting that Lucia versus SEC, which is also a case, I think that may contribute to the explanation. It didn't stop Lucia from raising it. Well, Lucia didn't raise it in the first instance, and that case is somewhat unhelpful in its timing. Otherwise I would rely on it much more in terms of preservation because Lucia, the court just says timely and doesn't give many guidelines, which is part of why I think they took the car decision, took the car case just earlier last month. So Mr. Gray, is your position that for these types of structural constitutional claims that the exhaustion provision in the statute doesn't apply or that raising of a structural constitutional question is reasonable grounds for us to reach the issue? Well, I think that the Friday case would frame it more in the latter structure, that it is the statute doesn't apply because that wasn't construing this reasonable grounds exception in 78CY1, I believe it is. But it's a belt and suspenders. In this case, we also have a statute that's very forgiving in terms of preservation, so reasonable grounds. Can we read the statute to be forgiving? I mean, we have precedent saying that it is a jurisdictional exhaustion statute. If we just read reasonable grounds to be almost anything, any question that we want to reach, then aren't we undermining the jurisdictional nature of the exhaustion requirement? No. So this court also has precedent in the KPMG case insisting on nothing more than a reasonable explanation. And I believe it's also that case that distinguishes other examples like the extraordinary circumstances threshold that's required in different statutes, which I can't quote chapter and verse right now, but they're in our reply brief. This court has appropriately given credit to the way that Congress structured this preservation requirement. So no, it is a laxer standard than is written elsewhere. That's consistent with KPMG and other I point the court to the general views from Action for Children's Television. This agency's general views are already known as we detail in the reply brief. Can I ask another thing? You've argued that the FINRA hearing folks are state actors. Where have you argued that they are officers of the United, not just state actors, but officers of the United States, which is what you have to argue to make them subject to the appointments clause? Well, we certainly argue that now, Your Honor, and that's the point. Where have you argued that they're officers of the United States? That's going to require a complicated inquiry into the nature of this whole SEC. Oh, I understand the question. These FINRA hearing officers can't just be government officials. That's all state actor would mean argument. They have to be officers within the meaning of the Constitution. I understand the question. And that answer is already provided by the Supreme Court and PCAOB. That's the whole point of that decision. They described the similar removal process. Remember, it's the removal removal process here. I'm asking about the nature of their decision making role to be an officer of the United States. You have de novo review by the SEC in these cases. And so I just I did not see an argument in your brief that these are officers of the United States. So too in PCAOB. I mean, that our argument on the on the merits of that is basically applied. Now, where is where are you arguing that they're officers of the United States as opposed to state actors? Your Honor, the argument is that PCAOB is on all fours with this case. And as the court explains, you can't I mean, that's a different scheme. This is a different statutory scheme that has de novo review by the SEC. And so you might be right. But normally we would expect someone to say they are officers of the United States. Here's the test for an officer of the United States and apply the PCAOB case that way. But I didn't see that argument. I assume that the Appointments Clause applies. But if I missed it. So I think we argue it. I think we point out that the Supreme Court's holding in that case explains at page 44 that PCAOB is modeled on the SROs. And at 47, they talk about 78 SH4 and explain that this is the exact same. These are birds of a feather in terms of how these two agencies are structured. So when the court reaches the merits of the Appointments Clause case, there's no room for doubt that the PCAOB applies in this in this instance. In the peekaboo case, there was a stipulation that that the the members of the PCAOB were officers. I would have to look at that. But it's I mean, if the court wants further briefing on whether an officer is an officer, I'm happy to provide it further. I'm trying to figure out if there's any. But go ahead. Yes. But that's I think it's stipulated because it's it's impossible to argue to tell you the truth. I think the reason that PCAOB comes out that way is that given their decision making capacity and the fact that these folks are double good cause removal away from the president is sufficient. And then, of course, that's just to get to the board members. When talking about the hearing officers, it's yet one further step removed, which leads to that great line about the matryoshka doll of tenure protections. And that's where Lucia and others come into play. Mr. Drayton, say we were to agree that you have preserved these issues, and would we need to remand to the SEC to consider them in the first instance? It would be with the court certainly could. I think the better outcome would be to vacate the lifetime ban and the portion of the disgorgement that's attributable to continuing education and other business expenses. Set aside the twenty six personal expenses, which, you know, Ms. Pringsteen Abbott has accepted responsibility for those from day one, in fact, during the hearing. But the court could, I think, adjust the disgorgement by I think it's about thirty thousand dollars. And then what really matters is vacate the lifetime ban and remand for consideration of that, because under the guidelines, the SEC is to consider a bar for a number of years. I think it's up to two years for misuse of funds. This isn't even a conversion case like in I'm happy to talk about that if the court is interested, but this isn't even a conversion case, which is a more stiff allegation. This is a misuse of funds case and it involves no more than twenty six items. So what I think would be the correct remedy, Judge Rao, would be to vacate the lifetime bar and then we'll have to sort out whether some version of time served and expunging the bad actor scarlet letter that attaches under Rule 506 D would be appropriate. But but that's something that the commission could work out. Thank you. My colleagues have more questions. No, no. OK, I think you're from the SEC now, but we'll give you a couple minutes on rebuttal. Thank you. We chewed up your time and more. Good morning. May it please the court. Daniel Sturzowski for the Securities and Exchange Commission. I would just like to make two points at the outset, one about the due process argument and the second about the appointments clause. With respect to due process, I think the court, Judge Solomon, Judge Mollet, you have it exactly right. It doesn't matter what you call it, but everybody agrees that the proceeding has to be fair. And the commission addressed each and every argument that petitioner made before it to the effect that the proceeding was unfair. And that's why there was a remand to FINRA, both with respect to liability and the remedy. And so the order on review now is the commission's most recent order. It's not the FINRA's orders. With respect to with respect to the appointments clause. Before we get to that, so they argue about the fact that the record was not reopened in the second round. Can you address that, what constraints there were on Ms. Springsteen Abbott's ability to prove her case or not on the second round before FINRA? Right. And I you know, first of all, I didn't understand them to be making this argument at all, either in their opening or reply briefs. This is something that popped up for the first time at oral argument today. But the commission addressed this issue at JA 12 to 13. And it said, first, against Judge Solomon's point, you know, the remand order from FINRA to the commission the first time around, it didn't require FINRA to reopen the record that they could have left open to consider, you know, the issues on the record that had been so far. And with respect to reopening the record, I think the commission's point is that just petitioner didn't do enough to bring to FINRA's attention, whatever issues that they wanted FINRA to consider. But that is all spelled out at JA 12 to 13. With respect to the appointments clause, just a couple of points. First of all, I think my friend might have misspoken. It's not the SEC's statutory scheme that's on review there. It's the Social Security Administration. And Judge Rao, to your point, that's an entirely different statutory scheme, because as in FRATAG, there's no statutory exhaustion requirement. And it involves judicially developed exhaustion. And in that circumstance, if the courts develop an exhaustion requirement, they kind of have more leeway in determining whether it ought to be excused. But here we have a statutory exhaustion requirement, whether you call it jurisdictional, whether you call it claim processing, it's mandatory. We've raised the forfeiture point. And what do you think about the reasonable grounds argument, right? Is it reasonable for Springsteen Abbott not to raise these questions, the constitutional questions before the commission, either because the commission lacks the power to decide them or has previously, you know, declined to reach those questions? Well, under, I think the courts have uniformly held that's not a reasonable ground. I mean, I do want to take issue a little bit with the premise that the commission has a set policy on this issue. We cited the Quattrone and Thicken cases in our brief. Those involved a little bit different set of due process claims. The argument there, or sorry, state actor claims. The argument there was that the way that FINRA and the commission had investigated a certain conduct, they were acting to, you know, jointly. And so that raised a due process concern. And in Quattrone, the commission actually dismissed the proceeding on that ground. But, you know, more fundamentally, I think the point is the reason you raise these arguments is that putting aside the label, you give the commission an opportunity to consider the arguments on the other side. And that informs this court's review. Could the SEC decide the appointments clause issue? I mean, I think the commission certainly could decide it. You know, there's a question about remedy and so forth. But I think this court talked to that issue in the Jarkissi case that we cite in the brief. And, you know, the point is, especially with the appointments clause, Judge Mallette talked about this. These issues get into the real minutiae of how the agency or, you know, the body on review works. And regardless whether the commission ultimately has authority to, you know, it's authority to like remedy the decision, at a bare minimum, what it says will inform this court's review. And there's no shortage of these FINRA cases coming up through the pipeline. By my count, this is the third FINRA case, just this term, that this court is considering. And look, you know, the petitioner's opening brief talks at length about how these issues have been written about for a very long time now. There was no obstacle whatsoever to them raising these arguments before the commission. They just chose not to. And, you know, I think there might be some close cases on what constitutes a reasonable ground, but this is not one of them. What would be a case where you thought there was a reasonable ground? I think if there's an intervening change in law, I think that that might be a reasonable ground case. But there's nothing like that here. Lucia was decided while these proceedings were pending. Petitioners had no problem raising COCESH when that came up and brought it to the commission's attention. Lucia was out there. They didn't say a word about Lucia. This is just something that they came up with for the first time on appeal. And I don't think this court should, you know, encourage that type of practice. So do you think the fray tag, I mean, I guess you spoke about this a little bit earlier, but so you think fray tag is simply not applicable in a context where you have a mandatory or jurisdictional exhaustion statute? Yeah, I just think it's a very different set of considerations there because we have a statutory exhaustion requirement. I mean, I will say that, you know, the way that we read the case law, it seems like the court has backed away from what it did in fray tag a little bit. So in Lucia, it talked about appointments clauses, challenges being raised timely, and that cited Rider, the Supreme Court's decision in Rider. But it's just, it's a different set of considerations. Here's a hypothetical for you. Suppose the SEC were to issue a rule that related to FINRA procedure. There wouldn't be any question in those circumstances that anybody affected by the rule, any organization affected by the rule, could bring an action in the Court of Appeals challenging the appointment process. In other words, I'm distinguishing a challenge to a rule from an adjudication. You know, Your Honor, I don't know how to answer that, frankly. I think that's, you know, possible, and maybe the court would have to confront that in that Congress wanted objections to be urged before the commission. They were not. Well, you see, if it was a rule, you wouldn't have the same problem. But anyway, you don't have a rule. So that's just a hypothetical. Why? Well, I'll reserve a question for counsel on rebuttal. Go ahead. I'm sorry. Judge Girard, did you have a question? No. Go ahead. Counsel? Oh, pardon me. I thought the court might have had a question. Well, I mean, unless there are any further questions, we'd ask the court to deny the petition for review and affirm the commission's order. The argument about how to treat the continuing education expenses wasn't a valid exercise of business judgment? Sure. And so, again, so this argument, their only legal argument about liability on this was raised for the first time in the reply brief. The only thing they said about this in the opening brief was about disgorgement. But, you know, I do want to give the court comfort on this issue. And this is addressed in the commission's opinion at JA11. And, you know, the bottom line is that their argument just doesn't jive with the contractual language or with the evidence. So the language in the offering documents is it authorizes the funds to be charged for such other related administrative expenses as are necessary for the prudent operation of the funds. So it's not just anything that petitioner considers prudent. It has to be necessary for the prudent operation of the funds. And the briefing on the other side just completely omits that necessary language. And then on the facts, you know, recall what we're talking about here. These are FINRA continuing education expenses put on by Commonwealth Securities, which is the broker-dealer. But petitioner wants to, you know, she wants to charge investors for the cost of putting on that continuing education for employees of Commonwealth Capital, which is not the broker-dealer. And there's just nothing in the record to explain why that's necessary for the prudent operation of the funds. The closest they come is... Correct. I mean, that's the whole dispute. Yeah. And so, you know, the closest that they come to is they cite petitioner's testimony at JA 676 that she used her business judgment. But there's just nothing to give content to with that to explain why she thought it was necessary for the Commonwealth Capital to get continuing education on FINRA requirements when Commonwealth Capital isn't the broker-dealer. They can't perform broker-dealer functions. My colleagues have any more questions? No, ma'am. All right. Thank you very much. Thank you, your honors. And we will give Mr. Dre two minutes for rebuttal. Excellent. So before you start, counsel, let me ask this question. You can see at best, at very best, for your point of view on the appointments clause, including the officer of the United States question, your very best, you could say at the time you're litigating this case in before the commission, is there's some confusion on this issue coming from the Supreme Court. Arguably PCOB is inconsistent with Elgin. Three justices thought so. So isn't it unreasonable not to raise this issue before the SEC? No. And actually, I'm glad to get back to the reasonable grounds argument because it occurred to me while my friend on the other side was speaking that Judge Rao has asked about the mandatory statutory requirement here and whether that distinguishes the other cases. It does not because as this court has explained, and we cited at page six in our reply brief. You're not answering my question. My question, given the best you could make out of an argument, is there some confusion? I think Jarkazi is very much against you. But the very best you could make as an argument is there's some confusion in the courts. And therefore, why isn't it unreasonable not to raise this issue before the Securities and Exchange Commission, given the fact that it is arguably a jurisdictional point? So I disagree with your honor's premise about whether there's confusion on the relevant part of PCOB for this case. And then as to the reasonable grounds, I call the court's attention to its precedent in the Washington Association for Television and Children case, which explains that 78CY1 merely codifies the traditional common law exhaustion requirement. So in light of that, you're not answering my question. Why isn't it unreasonable not to raise this issue before the Securities and Exchange Commission? It's not unreasonable because I don't agree with the premise that there is confusion about the meaning of PCAOB. Moreover, I'm not Elgin Vaxloff PCOB, isn't it clear? No, your honor. But moreover, and more importantly, I think a litigant is not obliged to raise these issues in front of the unconstitutionally comprised adjudicators. It can wait until it's in court. That's what happened in Friday. Even after stipulating to appear before the special judge in that case, they waited until they were in the Fifth Circuit to raise the appointments clause issue. And the court at some length explains why that was the choice. I thought you were trying to ask a question a minute ago about the television case. Well, I mean, well, I mean, again, I mean, for one thing, Freytag, again, there was no jurisdictional statute in the case that you keep citing about interpreting 78YC1 is before I believe our decision in KPMG, which said that that statute was jurisdictional. So you can't really rely on that earlier case. Well, so KPMG doesn't reverse on whether or not the purposes is mere codification of the common law preservation requirements. So a common law preservation is different from a jurisdictional requirement. I mean, it may not say it's reversing, but I mean, those are two very different things to say. Congress created a jurisdictional exhaustion bar is different from judge made exhaustion doctrines. And perhaps the way to cut the knot, Your Honor, is to think about what exactly Congress made here. And that's where the reasonable ground does some of the work. And KPMG is actually very helpful for that, because as they explain, it's just a quote, reasonable explanation, which I think is more than satisfied in this case. The one other thing that I would to respond to briefly is about the continuing education expenses. The reason that those are appropriate and we cite, you know, it's a stipulated exhibit at JA 544 through 545 that lists the allowances for charging expenses to the funds. And I encourage the court to read it entirely because I think it's clear that it incorporates a business judgment rule. And the problem, the difficulty for us, of course, is that you didn't raise this argument at all until your reply brief. So we haven't, we have no briefing from the SEC. I mean, he just, you know, gave us some response here to oral arguments. So why isn't that argument forfeited by failure to raise in your opening brief? Unless you can point to me where your opening brief raised this argument. I will look for that. But it's everywhere that we talk about the loon decision around discouragement. And we explained in the opening brief that the Commonwealth capital has no employees, excuse me, the funds have no employees of their own Commonwealth capital has. I've got that. We got that. I was talking about the record argument you're making now about this judgment rule, which I did not see that phrase in your. That is the, that is the argument that applies here is that because the funds don't have any employees of their own. That doesn't establish a business judgment rule or necessity, like you said, but that the whole set, I'm asking you a separate question. I'm not asking you to rehearse your argument on that front, which we have from your reply brief. I'm asking you to do is say why we would even entertain it since it wasn't raised in the opening. Here it is in the opening brief page 11. We explain the operating agreements between Commonwealth capital and the funds did not require any contribution to the salaries, but it did allow reimbursement reimbursement for expenses that were in Miss Springsteen Abbott's business judgment. Well, related to the operating operation and administration of the funds. And it goes on, even the argument section of your brief page 11. At some length, your background description of what you argued maybe below. Can you tell me where in your argument? No, that's that's background facts for for the argument that appears. Let me see at page. Okay, so then at page five, you get the Commonwealth capital operating arrangement explanation. Page is 7, 10, 11, 16. And here's the loose citation is that page 53. This was absolutely raised in our brief and the right. All right, that's fine. I'll look again and see if you've raised this argument in your brief further. We're way over. We've had a lot. We've had a lot of time at this point. Unless there is anything further, I'm happy to leave everything else on the papers. Thank you. Thank you both counsel. The case is submitted.
judges: Millett, Rao, Silberman